Thank you, Your Honor. May it please the Court, my name is Jim Pickle. I'm representing the appellant, John Quinn, in this case. In every complex case with multiple errors, I find there's usually one fundamental seminal error that leads to all the other errors in the case, such as the case here. The seminal error in this case was when the State District Court, before removal, dismissed the intentional tort claims against the police. That error led the Federal District Court, after removal, to find that the police were totally out of the case, like as if they had never been in. And then when Quinn clarified his pleadings to add the 1983 action in, officially, the Court found statute of limitations had already expired, did not apply the relation back doctrine, because according to the Federal Court, those police officers were out of the case completely, and so relation back doesn't apply to new parties. So then they dismissed the case on statute of limitations. If we correct the error on the intentional tort claim being dismissed by the State Court, all the other errors can be corrected at the same time. How does the Garcia case fit into this? Doesn't it make fairly clear that even though intentional torts might not fit under 1983 or under the Texas statute, that there is an irrevocable election when you sue, even for intentional torts, both the individuals and the municipal body, and you don't get a do-over? I'm not sure if your question relates to the remand pre-removal issue about dismissing the case. I'm talking about once the decision has been made that this is an action under the Texas statute, and once the defendants have, individual defendants have been dismissed, they are out of the case, even if you only had brought intentional tort actions to claims against them. The point is, Your Honor, the Texas Tort Claims Act does not allow the State court to dismiss the intentional tort claims against the individual police officers. But didn't Garcia allow it? No, it does not, Your Honor. What Garcia said was intentional torts made against a government entity are under the Act, not made against an individual government employee. In fact, the Supreme Court in Garcia was very clear to point out that we are not a let intentional tort claims made against Mr. Dyer, the individual in that case, we are not talking about that. We are only talking about intentional tort claims made against the government entity, in that case the school district. So this election that you're talking about and that Garcia talks about is actually not applicable in this case because intentional tort claims were made against the individual police officers. The Texas Tort Claims Act does not allow those to be dismissed. If it did, it would violate due process in the open court's provision, and no Supreme Court cases out of Texas have ever held that that's the case. But the court did dismiss it, and then isn't the rule that once a suit is dismissed, it's as though it was never filed? If it's dismissed properly, I agree with that. Well, but I mean, the court dismissed it and no review was taken. Well, review was attempted, Your Honor, review was not allowed. Now, this is the review right now because the case was removed to Federal court. We are now here for review of that decision, whether the intentional torts were properly dismissed or not. But when was the review solved? Well, we filed a motion for rehearing in the trial court, and of course, the trial court and the State court did not overturn his ruling. Then we filed a motion for rehearing in the court below here, and that court didn't hear it. They said it came too late. And now this court is now the court of review for whether that was a correct decision or not. We're entitled to appeal that ruling. Do you argue with the district court for saying it was too late? Yes. Why is that? Because it's an interlocutory ruling that can be ruled on or decided any time it wants to at the district court level. It wasn't a final order. It was an interlocutory ruling. Would you have been allowed to appeal the dismissal in State court if it had not been removed? That's an interesting question, and the answer is really no, because since it's an interlocutory appeals, we would have to wait until the case was final. But isn't there a case law in Texas that says interlocutory rulings based on jurisdiction are immediately appealable? They can be. Under 51014, certain ones can be appealed. And hasn't that been applied to this sort of dismissal? Well, I don't know if it's been applied or not. That's for you to decide. No, it's for Texas courts to decide, and I think they have decided it. They have not. They have not. It's a May appeal decision under the 51014. We don't have to. We can wait until the end of the case if we want to. Let me take you back to Garcia. The claim in Garcia was against a governmental entity and an individual. And the claim was intentional infliction of emotional distress, defamation and some negligence claims. The individuals were dismissed. The Court says that the tort claims against the individuals, though not negligence based, were nonetheless presumed to be under the Tort Claims Act. And they upheld the dismissal of those even though they were intentional tort. Two of them, at least, were intentional tort claims. I apologize, Your Honor. That's not what Garcia did. Garcia did not have any ruling based on the intentional tort claims against the individual dyer. It only. But what it says is, and I'm looking at page 659, but if the ISD had obtained the individual dyer's dismissal from the suit under subsection E, all of Garcia's tort claims would be barred. Because, as we have said, all tort theories of recovery alleged against a governmental unit are presumed to be under the Tort Claims Act. Exactly. That means that you had to make an election of claims. No. That's not what that means, Your Honor. What that means is the election that is made under the Texas Tort Claims Act, the actual election that other cases have talked about, including Garcia mentioned it, is if you, if there's a claim made under the Act, which is a personal injury case, use of motor vehicles, use of personality, the things for which the Texas Tort Claims Act waives immunity. If that's the claim, not intentional torts, if that's the claim, then you have to make an election on whether the employee is or is not acting in the course and scope. But you just told us that the outcome of the case was, didn't apply because dyer wasn't dismissed. And I'm telling you that the court specifically said that had the district moved against dyer, then that would have been dismissed also. If they had, it was dicta at that point, because no briefing had been done on the case at that point. Well, I'm sorry that we, you know, we don't, we regard Texas Supreme Court dicta pretty seriously. I understand. But still dicta wasn't briefed in that case. Were their dictas better than our eerie guess, wouldn't you think? I think what I suggested in my brief was if you're not clear about this, you can always certify the question to the Texas Supreme Court, and you make this exact issue a certified question. And that exact issue would be, if an entity and an employer both sued in the same case, and the employee is only sued for intentional torts, does the city have the right to have the intentional tort claims dismissed against that employee just because they happen to be brought in the same case with claims made against the entity? If you ask that question to the Texas Supreme Court, they will not answer yes. They will answer no. Because otherwise, what that means is every time a government worker commits an intentional tort while at work, the plaintiff has no remedy, because if he only sues the employee under 101-106e, the city can get the employee out, your intentional tort claim is now made against the city, the city has immunity from intentional torts. Well, what that means is you could only sue the individual. No. That's what I'm saying. If you just sue the individual and he's in the course and scope under 106e and F. He's not in the course. Okay. Well. If he's in the course and scope, you're right. Right. If he's in the course and scope and it's an intentional tort, he gets out. What's your best case? Pardon me? What is your best case in support of this theory? My best case is actually Garcia in talking about the fact that it. What is your next best case? I didn't prepare for a next best case. Well, that means there isn't one. In all the cases that we found, I mean, we look pretty hard. All the cases that we found basically did create a Catch-22 for many people suing, but they have remedies under the Tort Claims Act. The Catch-22, the election, is only if the claim made by the plaintiff. Everybody knows. I mean, everybody knows. Look, it was you who chose to set the case up this way, representing the plaintiff. You didn't want to be in federal court because I suspect you knew about qualified immunity. You deliberately pled state claims. You're going on a very novel theory of state law, and therefore, when you were forced to replead and assert 1983, it was a little bit late in the game. I mean, you say the open court's provision is violated, but clearly, there's a remedy under the Constitution. I'm not sure that's a question, Your Honor. Well, I guess I'm saying you're making your open court's argument, but I'm not sure whether the Texas Supreme Court would say that the courts are closed when you could have sued under 1983. I think the Texas Supreme Court's going to say that I have Texas state law remedies if I want to bring them, and I did. What's your best case? For the Texas Supreme Court. Yeah, give me one case that involves alleged excessive search or search outside or search and seizure outside the provisions of a warrant or excessive force in which the Texas courts have allowed this kind of suit to proceed. I'll be happy to file a supplemental brief. I've never had that question raised ever, so I haven't researched it. Well, I mean, in which case you have not found the claims barred, either against the individuals or against the entity. I found cases where the claims have been barred against both. Yes. The claims are barred against the individual if it's a negligence-based claim that the city is already liable for. Those are barred. They're barred against the city unless they fall under the Texas Tort Claims Act. There's lots of cases that talk about bars both ways. But the problem is the cases also say when you're talking about police and when you're talking about excessive force, excessive force is construed not as an intentional tort. If excessive force isn't an intentional tort, then you can't bring it under 1983 because that's for intentional torts. I'm just saying what the Texas case law under the Tort Claims Act says. You cannot replete actions as intentional torts when they are taken in the scope of the employee's duty solely to get around the Tort Claims Act. You're talking now about whether you cleverly craft an intentional or negligence claim as an intentional tort. Well, you did that, too, in my view. Well, they assaulted my client. That's assault. That's an intentional tort. There's no clever pleading about that. They assaulted him. Every policeman who handcuffs a suspect commits an assault, which is an unwanted touching. But if he does it within the confines of his job, it is not, you can't sue under the Tort Claims Act. I've never seen a case that says if a police officer commits an intentional tort and it commits excessive force. City of Waco v. Williams, 209 Southwest 3rd, 2006. This is detainees' children brought action against city for detainees' death, which occurred after police officers repeatedly shot him with a stun gun. Negligence claims arose out of officers' excessive use of force, which alleged intentional tort, and thus, claims fit within exception to TCA and claims of negligent implementation were precluded under the TCA. I'm sorry. I don't know if that's a question, Your Honor. I'm sorry to be argumentative with you. I was citing a case that I think forecloses some of your claims. Well, one claim that's not foreclosed in this whole thing, for sure, is the knock-and-announce violation. That's not foreclosed. That's a Fourth Amendment violation, which the city, by the way, has pretty much admitted happened. There were no exigent circumstances. The SWAT leader at the scene, Officer Guerrero, testified under oath there were no exigent circumstances. They did not have a knock-and-announce warrant or a no-knock warrant. They didn't knock. They didn't announce. They violated the Fourth Amendment under Richard v. Wisconsin and Wilson v. Arkansas, and this Court can reverse and render on that constitutional violation, and should, because there's no evidence or argument otherwise. So that claim must go back to the State, to the trial court, for imposition of damage or trial, maybe, or imposition of damages and attorney's fees, because that's basically admitted in this case, that there was a knock-and-announce violation. Is that under 1983 or under the Texas? It's under 1983. And it's against the police officers. I know. But that's barred by limitations, right? It isn't if we go back and fix the first error. If we fix the first error, that they can't dismiss. We pled different claims against the City and against the individual officers in this case. The only claims we pled against the City were for failure to train and supervise. The only claims we filed against the police officers were for intentional torts. Because of the little part of the Texas Tort Claims Act that says if instead of those negligence, then the City is vicariously liable. But we never sued the City for negligence, and we never sued the cops for negligence, because we don't know whether it was negligence or intentional tort. At this point, you can't – nobody knows. It's unknowable. Officer Guerrero himself testified that he doesn't know whether he shot accidentally or on purpose. He says that right in the record. So, I mean, I don't understand why I'm required to make some kind of a guess as to what the claim is going to be when I don't have any idea and the facts support either way. I mean, that seems like a due process violation. If I'm required to guess, and if I guess wrong, I'm out. And by the way, I'll never guess right. Because no matter who I sue, that person's going to throw the other one under the bus in court. The cop will either admit, no, it was really an intentional tort if I sue the City, or the City will say, nope, it was an intentional tort. No, it wasn't negligence. So I'm never going to – you're never going to win if you have to make that choice. That can't be the law. I'm out of time. Thank you. We have to cancel the rebuttal. Mr. Brandt. May it please the Court. Didn't you used to be a bankruptcy lawyer? No. I don't want to get anywhere close to bankruptcy. That's another Tom Brandt? That's another Tom Brandt. Okay. Probably a smarter, better looking one. May it please the Court, I represent the City of McKinney and the individual City police officers in this case. I believe that the Court has a proper understanding of the Garcia case and the way that the election of remedies works in State court. And I believe the Court also has a proper understanding of the available remedy under the Fourth Amendment for an alleged illegal search and seizure, excessive force. Well, the allegations in here are pretty serious. And the upshot as of now is that there is no remedy for that. It seems to me the primary position your brief is taking is if there were a claim, it was against the individuals and it had to be timely filed under 1983. Yes. It did have to be filed against the individual officers under the Fourth Amendment and it had to be filed timely. And in the language of the Texas court, I think irrevocable or something like that, once the mistake is made, if we so find, I want to prejudge that for your friend on the other side, once the mistake is made in suing the municipal body in addition to the individuals, motion filed, individuals are permanently out of the case. Yes. Is there a right to appeal, a right to review of that decision had the State and State court of dismissing the individuals? If I could, Your Honor, let me answer that in two ways. First of all, the procedure that was available to the parties in the State court at the time was a special exception. We filed special exceptions to figure out is he pleading a Federal claim because most of the time these cases are brought as Fourth Amendment cases. And so there was an opportunity very clearly for Mr. Quinn to plead, to say, oh, no, I am pleading a Federal claim here. And, in fact, that was discussed specifically. I brought that up to Judge Rush in the State court. I said most of the time I see these cases, they come as a Fourth Amendment case. We are filing a special exception here, Your Honor, because we don't see a well-pleaded Fourth Amendment claim here. Now, the specific question you asked, Judge Southwood, has to do with appealability. And it is my understanding, although I'm not fully prepared to answer that question with any definitiveness, but it is my understanding that there would have been an appellate remedy for Mr. Quinn at that point. Immediately as opposed to review later at the end of the case? Yes. Is there any case law that said it would not have been reviewable at the end of the case? I'm not aware of any, Your Honor. Was that appeal mandatory at that time, though? In those interlocutory appeals, you have to do it within a fairly quick period of time afterwards. It's statutorily. You don't have the losing party doesn't have the right to wait until the end of the case, or does it? But in all fairness, I have reviewed it. Does he have the discretion to wait? No. No. How do you know that? Is there a case that says it is? Because I've taken those appeals when I've lost at least the jurisdiction. I thought your brief cited a provision of the Texas Civil Practice and Remedies Code that allowed an interlocutory appeal. And I thought there was some byplay about that in the briefs, and I'm afraid I didn't follow up on it. But what I read from the briefs was that the provision for interlocutory appeal is only if the officer is denied immunity, not if he's dismissed and granted immunity. I believe that's correct, Your Honor. That is correct. Well, it's in your briefs. Yes, it is. So it's doggone it. Well, let me— No one should tell us about that. I mentioned the statute that does seem to be involved here, which is 51014, Appeal from Interlocutory Orders. A person may appeal from an interlocutory order of relevant courts, several different bases. One is grants or denies. Grants or denies a plea to the jurisdiction by a governmental unit, as that term is defined in some other part of the Civil Code, Remedies Code. And the Supreme Court of Texas has defined that as applicable to this statute that we're dealing with. And it says grants or denies, even though the Texas Supreme Court only was talking about a denial on the fact. So, I mean, I will agree with opposing counsel that it's unclear. But it does seem to me the better reading of all this is there would have been a right to appeal at least as of that time. And what concerns me, is it clear that there's not a right to save that issue to bring up in the ultimate appeal of the final judgment? Well, Your Honor, I think you're right. It is unclear. I think in the case of a denial to a governmental entity and a plea to the jurisdiction, they have that right. Well, now, is it a governmental entity or is it the policeman? Because here we're just talking about the policeman. If the policeman's, if the, we asserted 101.106, the statutory election. As to both. As, well, but we brought it to the benefit of the officers through the, it actually is structured in such a way as the city has to bring it and then the officer is dismissed. And if that had been denied, then we could have explored the possibility of taking an appeal at that time. But I think what we did, we were doing two things at the same time. We were trying to get some clarity about what pleadings were here. Did we have a federal claim here? That's why the special exceptions were filed. And then we also filed the pleading under 101.106 saying, if you don't have a federal claim, we're trying to flush it out and say, if you don't have a federal claim, you're going to get ready to get your cases. Let's, let's, I don't think you're understanding this. And I don't think the, not sure the other side does either. Suppose you're in federal court. Plaintiff sues three police officers. District court grants qualified immunity and dismisses two, and one remains in the case. No appeal is taken. Judgment is entered eventually, let's say, against the plaintiff. The plaintiff appeals and he says, oh, by the way, not only should it be reversed as to the one I went to trial against, but it should be reversed as to the other two. I believe I understand what you're saying. Now, in federal court, in federal court, that appeal would be properly preserved. Yes, yes. So I think the question is here, why would it not be properly preserved in Texas? And I don't know that answer, except that I suppose it would follow along the same lines as the federal court. But I'm not sure, if you dismiss them, I'm still not sure you can, the federal court can come in and revive a stale claim by just allowing a new suit to be filed. I guess that's a slightly different question. I mean, there's no question that the appeal of the dismissal of those officers is properly before us, right? Yes, yes. Subject to the statute of limitations, which is the issue. Right, and that raises the limitations, yeah. Right. And the limitations issue is, I understand what you're saying. This is serious allegations in this case, Judge Southwick. I understand that. We, of course, on the merits, we claim a very different version of events. However, the perceived unfairness of the state court remedies provision and all has to be understood in the context of what was available to the plaintiff. The plaintiff very easily had available to him the Fourth Amendment, Section 1983 claim that could have been brought before the state judge, Judge Rush, dismissed with prejudice all the claims. What that did was it barred anything more, and it started the clock ticking. But it was announced, and it was in open court, and I said it to Judge Rush, these are typically brought as Fourth Amendment claims. I'm surprised he hasn't brought one. I don't know why he hasn't brought one, but I want to have this special exception to make sure he's not claiming to have brought one. And lo and behold, now later we're looking back, and Mr. Quinn is claiming, oh, I did have this latent 1983 claim that was kind of there factually, but it wasn't pled clearly. It wasn't a well-pleaded claim. We're under this statutory scheme. How can someone, you have some event, you have a detention or tort perhaps in one part of it. You have some potential municipal liability on some other part of the same event, failure to supervise, failure to train, policy of the police department. Is there no way to sue an individual excessive force intentional action by an officer and also sue the governmental body for some portion of the responsibility for an injury? The answer to that broad question is yes. If you're asking specifically under the broad view of it is what was available to that plaintiff in terms of remedies. Section 1983 Fourth Amendment was available to the person. So the fact that the state of Texas has structured its tort law in such a way as to force plaintiffs to make an election of remedies does not affect the Fourth Amendment jurisprudence. So he has no remedy under state law. Perhaps, but he would have a, but he does have a remedy or did until he, until he waived it by not bringing it in time. As long as it was timely, a separate 1983 suit against the individual excessive force, making that claim against an individual officer in a separate suit. You can bring a 1983 suit to state court, but you can't bring it in the same action. Oh, no, you can bring it in. There's no impediment to him having pled in state district court. But he didn't want to be in federal court. That's precisely correct. That what happened was he wanted to try to get around the removal. And you can see because what he did was he, he pled the term excessive force, but it wasn't under a cause of action. That's why we specially accepted and say, what are you bringing here? What he could have done and should have done was to bring a claim, a section 1983 claim in state court, if that's where he wanted to be. Then if I didn't remove it within 30 days, it would have stayed there and we would have gone up the ladder through trial and all the way up, presumably on a section 1983 claim in state court. State courts are courts of general jurisdiction and they have the ability to hear section 1983 claims. It's just that typically the defendants, when sued in a 1983 claim, will take them and remove them to federal court because the federal courts are more familiar with that jurisprudence. But it doesn't mean that they can't do that. In fact, they can and should do that. They should, if they have a legitimate claim under Fourth Amendment, they should bring it. And if they also want to bring a battery claim, bring that too. But that battery claim is going to be dismissed if they file a suit against, also against the city as well. So there is no overarching unfairness about this situation. It is a situation which remedies were available. Those remedies were not availed in a timely manner and the district court looked at it and said, you've blown the statute of limitations and that was dismissed. So there is a remedy. It just wasn't used and it wasn't used properly. The other issues, if you look through, there is the remand. And I think the remand, there was no objections made to the magistrate's recommendation on that. And so that's a plain error review and I think that the district court was correct when it denied Mr. Quinn's motion for remand. We've talked about the election of remedies and the statute of limitations. There's also the last issue he brings is the punitive damages issue. And I think it is such an easy issue to deal with that I want to talk about it because it illustrates something about the pleadings and the briefing and the case. Everyone knows the city of Newport versus FACT concerts established long ago that punitive damages are not available against a municipality in a Section 1983 case. It's long been held that. Nevertheless, in the briefing that is before you, the appellant claims that he is entitled to punitive damages under 1983 against the municipality. Citing no case law, but that's precisely what's been going on throughout the rest of it. When you talk about 101.106, the state election of remedies provision, then you get the reading that you've heard of the Garcia case. It's that sort of reading that is completely off of the norm. Texas courts understand its law. And the same thing as we go through and you look at the Monell issue as well. The Monell issue with regard to the city. It has been clear that he had many chances to amend and he did not bring any facts which would have indicated that this incident was caused by a policy, custom, or practice of the city of McKinney. So what you have here is a proper dismissal of the claims against the city as well. I don't want to unnecessarily take up the court's time and I will yield the rest of my time to the court. But just with closing briefly to say that the remand was, I mean the removal was proper. The decision not to remand it was correct. Your understanding of section 101 is the correct understanding from the Texas Supreme Court Garcia case. He had an opportunity to plead a Fourth Amendment claim within the period of limitations. He didn't do that. It's a straightforward application of the statute of limitations. He hasn't pled a proper Monell claim under policy, custom, or practice. And, of course, the punitive damages claim is dismissed under city of Newport v. Fat Concerts. With that, I will yield the rest of my time to the court. Thank you. Okay.  Mr. Pickle. Thank you, Your Honor. The defendants in this case haven't even answered yet. We haven't been able to do any discovery. What they're saying is I haven't pled policies, procedures, historical facts, patterns of conduct. All of that information is uniquely within their knowledge. I haven't been able to do any discovery yet. I have to be able to do discovery. Every Supreme Court case so far where there's been a dismissal on these facts has been after discovery has occurred. Every one. There's like six of them. Well, I was sort of concerned about that, but at the same time, this was a search under a warrant. It was. Yes, ma'am. And it seems to me we did have a case once coming out of Fort Worth where they said, well, we know that the police, they had some, they got, maybe that was on discovery. I thought it was 12b-6, use of force claims against the police. But, you know, how can you, how do you have any, how do you even have a good faith belief under Rule 11 that this is a policy or pattern or practice of the municipality? And I don't mean to be flippant, but it's recipsa. These people were not punished at all for what they did. They went in and shot a guy through a closed door during a botched SWAT raid. Were they disciplined at all? No. They were not disciplined. They were acting in the course and scope of exactly how this police department wants its policemen to work. We've had cases. We haven't had cases for a long, long time. And because the Supreme Court ruled differently, then normally you cannot infer a policy from one action. Right. That's why I need discovery. I want to be able to find out what the unique knowledge they have. Then I can bring that to the court and I can say, look at this pattern of conduct. Look at these actual customs and practices that everybody in the SWAT team agrees are true. I haven't had a chance to do that yet. So it's really, it's really kind of disingenuous for them to say. Are you to have a good faith belief? By res ipsa. I know what happened in the case. We got forensic analysis and no discipline. I mean, I'm not really, I'm not trying to be sarcastic, but I've never heard of res ipsa in regard to Rule 11. I think you have, and Iqbal and whatever, Twombly and so on. You have to have facts. I pled under Iqbal and Twombly what I needed to plead out of those cases. Now I need to flesh them out with discovery, and I haven't been able to do that yet. I will be able to do that. And if there's no there there, I'll dismiss the claims. But right now it looks like they're probably acting under the regular course and scope of their real customs and practices as opposed to their pristine written policies. Judge Southwick, 51014, you read it yourself. A person may appeal, not must, not shall. Well, right, but you have the right to appeal, so it could have been reviewed. Then it doesn't say what happens if you don't appeal that I could tell, whether you could save it for the end as would have been permissible in federal court, but it seems like there's a question there. Well, I mean, if it's a may appeal, I have an option. It seems like it wouldn't be the option of appealing right now or never being able to appeal. That would be the shall statute. If it shall appeal, then I'd do it now or never. But a may, I mean, that's — Does may mean that even though somebody is dismissed from the case, the statute of limitations remains tolled? That's a good question. I don't know the answer to that. Okay. It's a good question. But on that issue, you know, the lower court never considered the equitable tolling of statute of limitations argument that I briefed or the identity of interest doctrine. Never mentioned it. Never discussed it. Never said it wasn't applicable. Nothing. Both of those doctrines apply here. They may be rude, but they don't apply. I believe they do. I believe the case law is pretty clear that they do. But it's obviously your discretion to disagree with me, Judge Jones. I speak only for myself at this point. Perceived unfairness. What Mr. Brandt says is I have a remedy. Somehow Texas has said you have to go to Federal court. If you've got an intentional tort claim against one of our State workers, you can't bring it, you've got to go to Federal court. That's not the law. There's no cases that say that. The State law never forces claims to the Federal court. Never does. And on the remand issue, I understand the Fifth Circuit holds to the minority opinion or minority view that untimely removal when there are Federal claims pled is just a procedural and not a jurisdictional issue, but the Supreme Court hasn't spoken on that yet. Also, the City admits that we pled plenty of facts to allow them to have removed the case under our original petition. They admit that. They admit the facts were there. And I cited I think 15 cases in my brief where other courts have said it's facts. It's not causes of action. It's facts. If facts trigger Federal jurisdiction, that's when the removal clock starts, not causes of action. I would disagree with you that we're in the minority. The Supreme Court straightened out a few years ago where we were in the minority and the need to actually refer to 1983. It seems to me we are still looking at the general rule, not a minority Fifth Circuit specific rule, that you must be able to see on the face of the claim, of the complaint that you have a Federal claim. And I think the face of your, I mean, it's a judgment call, but I could see the judgment coming out the way that it's been coming out for you so far. I agree it's a judgment call, Your Honor. I just think the judgment was made wrong below and I hope it's made correctly here. Thank you, Your Honor. All right.